Judge Hughes, who is unable to be here through no fault of his own, and he is remaining on the panel, has reviewed the briefs extensively. I think our questions today may very well reflect some of the questions he had. He will review the oral argument after it takes place, and he will remain on the panel. This is unusual, but not unprecedented. The first case for argument is 22-1983, U.S. Capitol Police v. OCWR. Mr. Enzina. Good morning, Your Honors. You may please report. I'm Paul Enzina. I represent the United States Capitol Police on this appeal of a decision by the Board of Directors of the Office of Congressional Workplace Rights. The Board of Directors affirmed the grant of summary judgment. Before you – I'm sorry. I won't take very much of your time, but I have some preliminary, just sort of technical questions. Sure. The other side raised in its brief the notion that they have the right to go ahead with the implementing the order. You don't ask for a stay within 30 days, yada-da. Are you familiar with what I'm talking about? I am familiar. And I didn't see any response to that in the query brief, so I just want to know what the status is. Have they implemented the order in this case already? What's going on? May I consult with the co-counsel? Sure. No, Your Honor. The Capitol Police's position is that the order is not lawful, so they have not implemented it at this point. Okay. Well, I'll ask the other side to confirm. But thank you for that. Why don't you proceed? The Board of Directors affirmed the grant of summary judgment on the General Counsel's claim of an unfair labor practice on a single basis. It held that the Capitol Police committed an unfair labor practice by breaching its duty to bargain in good faith, specifically by failing to give adequate notice to the Union of Changes in Working Conditions. Now, that conclusion subsumes two factual issues. One is that the duty to bargain arose, and the second is that the Capitol Police failed to give proper notice. Now, this was on summary judgment, so obviously the burden fell to the General Counsel's Office to come forward with facts showing each of those things, showing, one, that the duty to bargain arose, and, second, that there was no notice or not sufficient notice. And only then would the burden shift. Okay. Can you give us a little more specificity? Because we seem to be focused, and I don't know if that's right or wrong, on this list of 35 items in the Hoyer letter. Yes. What is your position? Are there things contained in the Hoyer letter or other changes you are making now that you say you had no obligation to give notice and bargain over, or some of them or any of them? I mean, I could see how you would say some of the stuff in the Hoyer letter isn't stuff that we had to give notice or had to bargain. But is your position there is some stuff you should have given notice and had an obligation to give notice and bargain, and if so, did you? Well, Your Honor, that's precisely the problem here, is that these are factual questions, and there was no hearing. There was no chance to develop those facts. For example, first of all, if you look at the Hoyer letter, what the Hoyer letter says, it says, first of all, that these are the changes, and I want to get the language right, it says, these changes are part of a comprehensive and aggressive COVID-19 response plan that affects nearly every aspect of the department's operations, administrative functions, safety protocols, and facilities management. Now, for a duty to bargain to arise, a change must, first of all, obviously, affect the union. Now, the union, in this case, does not represent all capital points. Your Honor, I guess I'd just like to focus on some real things. Is there anything, I mean, you had discussions, at least in e-mails, it appears there were some discussion in the months of the end of May, March, and in April. You were discussing stuff with the union, stuff on this release, this ready program, stuff on the timing of disciplinary actions. So is it not your view that you had an obligation to bargain over some things that were going on here? Well, our view is that it was the general counsel's burden to establish that that burden arose with respect to any particular change. I guess, can you just answer my question? Is your answer is, we don't know or we don't have to say because they're the ones that have to prove it? Well, I think, Your Honor, correctly, the answer is the second, is that the burden falls to the general counsel here on summary judgment to come forward with evidence, first of all, that there was a change that triggered the duty to bargain. Now, if you look at the list in the Hoyer letter. Counsel, can I ask you a question? Sure. In the Hoyer letter, it says most of the changes described above likely are changes in working conditions, right? Yes. So is it your position that those, I understand that, you know, is the position in this letter that the CBA required notice, but your position is the statute did not require notice? What is your position? My position is that on summary judgment, it was the general counsel's burden to come forward with evidence showing that the duty to bargain arose with respect to any particular change. Why can't they rely on this statement, most of the changes described above were changes in working conditions? Well, the board read that as a, quote, unquote, concession, which is what the general counsel argued. Now, it's not a concession that any change in that list was, in fact, a change in working conditions. I really am having a hard time. I could understand if you were coming up here and saying we're on summary judgment and there are material issues of fact. Yes. What you had to bargain over, whether you had to bargain at all, maybe that's more of a legal question, not a factual question. And then whether you satisfied your obligation to bargain. Right. So I could understand an argument that was just saying summary judgment is not appropriate in this circumstance because there are material issues of disputed fact. But it seems like your argument is a little different. You're arguing that as a matter of law, they have to show that what you did was something that you had an obligation to bargain over, even on impact and implementation? No, I think, Your Honor, in the way you described the argument that you could understand is the argument I think I'm trying to make, which is this is summary judgment. And there are factual issues here. For example, one of the changes was that each employee of the Capitol Police would be given a bottle of hand sanitizer. Now, does that raise the duty to bargain? Where do you argue in your brief that there is a genuine issue of fact that precludes summary judgment of no notice? Because I'm having a hard time seeing it. And if you made it, I want to make sure I consider this. Well, Your Honor, the first argument in our brief is that the board erred in concluding. Could you tell me, like, what page should I be looking at to make sure I'm following along with you? Do I see exactly where in your brief you mentioned genuine issues of material fact that preclude summary judgment? Your Honor, I don't know if that specific language appears in the brief, and I couldn't tell you right now if it does, where it does. But what we did argue in the brief was that the board failed to require the general counsel to meet its burden to come forward with evidence. And it's only when the movement for summary judgment comes forward with evidence sufficient to show that it's entitled to relief. I understand. Do you have a particular case? I mean, I understand that's issue one. Did the board err in concluding that they met their burden to show entitlement to summary judgment? But it's written like it's a legal issue, like they had to prove a negative. So I'm just wondering, where do you raise factual disputes? Well, no, they didn't have to prove a negative. They had to prove lack of notice. Could you tell me more to my question? I could see where there's a genuine issue of material fact. Where do I see that in your brief, that you've made that argument? Even if it's inferred, where is it? Well, I think it is inferred or implied. Okay. Where do you say facts preclude that there are facts on notice? There are facts, something about facts and notice. until on or shortly after May 7, 2020. But if you look at that declaration, he does not say that that was our first notice, that we did not receive notice before that. What page would you have me look at for that? I'm at appendix 401 and 402. Oh, I meant in your appeal brief before us. Because we only consider issues that are raised to us. Page 22 of the brief. Nowhere in the record does Mr. Papathanasi, or anyone else on behalf of the FOP, state that the FOP had no notice of the changes described in the Hoyer letter, apart from receiving a copy of that letter. Do you agree there's a statutory duty to provide notice of changes in working conditions that survive suspension in the CBA? Yes. And the board found as much. The board said that there are situations in emergencies where that bargaining, the notice required for that bargaining, can be post-implementation. These changes took place in the context of the COVID epidemic back in March 2020. People were dying across the country. Do you take the position that the Hoyer letter was timely notice? I'm not arguing that the Hoyer letter was timely notice. What I'm arguing is that the general counsel's office failed to show that they did not receive timely notice. And to do that, it would have been very simple to put in an affidavit saying we did not receive notice of X change until Y date. In their statement of undisputed facts, they say they didn't receive notice, right? Well, what they rely on there is the Papathanasi. Did you respond to that statement of undisputed facts? I believe we did. Do you know where? I can't give you a page number off the top of my head, Your Honor. I apologize. Where in your petition for review to the board did you argue that there was no genuine issue of fact regarding your allegation that the police provided notice of any changes to conditions of employment? Well, part of the problem here, Your Honor, is that the way this... If you look at the procedural history of this complaint, the charge started out as a charge that there was an unfair labor practice by the Capitol Police in suspending CBA without bargaining. And that is the way this thing worked its way through the system until it got to the hearing officer where he made the finding about notice, and then the board of directors affirmed that. And that's where we asked for a hearing. We asked for a hearing on the issue of notice, because it's clear that the union knew about these changes. Can I just point you to... This isn't in the argument, just as responding to your response to Judge Stoll's question. It's not in the argument, but in the fact section on page 12 of your brief, you do have a discussion. I think you can see that you have to... On May 18th and 19th, the chief of police verbally informed the union that it would suspend the CBA. They provided documentary... You provided documentary evidence that while the CBA was suspended, the parties negotiated the impact and implementation of changes to working conditions, and that the USCP had not refused any grievance or arbitration during the suspension. And then you go on to talk about this. So what is the purpose of having this there? Were you refuting the facts? Were you saying that the inferences should be viewed as new? I, like Judge Stoll, am looking for your argument, which maybe in your view, it's another way of saying it, by saying it wasn't our burden. So whatever they put on, inference is going for us. It's insufficient. Is that part and parcel of saying there's at a minimum an issue of disputed fact here? Yes. Yes, very much so. And where do you get the closest to saying that in your brief? Well, as I said, it is clear that the union knew about these changes. They've been implemented. The union was already... If you look on April 6th, one of the changes was that people who tested positive would not be allowed to come back to work. And on April 6th, which is only a couple weeks after this all happened, after the changes began, the union demanded to know who those people were. So the union clearly knew about these things. Your Honor, I see that my time has stopped dwindling. I have some more questions. Do you want to continue? Okay. I want to ask you a few more questions. Let's see. Where in the evidence, what in the evidence do you identify to show affirmative acts of notice by the police? Well, Your Honor, with all due respect, that is not the point. Because the Capitol Police obligation to come forward with that evidence doesn't arise... Can you answer my question anyway? Let's assume for a minute that I don't agree with you on that. I understand they have the burden of proof. But I also think that you have... You participated, you moved for summary judgment on your... Both parties cross-moved here. And I'm not considering the denial of your motion. But I nonetheless want you to answer my question. And the question is, where in the record did they put forward evidence? Yeah, where in the record is there evidence of formal notice or actual notice? Well, Your Honor, I see on page 12 of our brief, we cite appendix pages 443, 450, and 525. I'd have to see what those are. I think they might be emails. They may be. So are you saying that emails that reflect that you were discussing these issues with the others in the union clearly established that they knew about it because you were discussing that with them? Is that what you're positioning? They do show that. As does the fact that, as I mentioned, the union was demanding to know the names of the people subject to these changes on April 6th. So they clearly didn't know. What happened on April 6th that shows that they definitely knew? April 6th is when the union... If you look at the Hoyer letter, this is the appendix page 462, the Hoyer letter states that on April 6th, the union demanded to know the names of the people who had tested positive for COVID. But that's not... That doesn't show that they knew of all of the changes, the 35 changes that were listed in the Hoyer letter, does it? Not all of them, but it does show that they knew of the first one, which was that people who tested positive would not be allowed to come to work. Okay. Now, one other question is, I believe that the decision below characterizes the email exchanges not as necessarily showing actual notice, but as showing evidence of negotiation. How do you respond to that? Well, I think the emails do show evidence of negotiations. I mean, the board refers in this decision to the evidence that the Capital Policing Board... I read through all the emails and they don't identify all of the changes. There's quite a few of them that aren't identified, according to the 35 in the Hoyer letter versus the email. So I'm just trying to understand your reliance on the emails. Is it more circumstantial evidence combined with Mr. Sun's declaration, perhaps? I'm just trying to get my understanding of how you think it raises a genuine issue of material fact. The problem, Your Honor, is that, as I said at the beginning, before the duty to bargain arises, there has to be a change that, A, affects the union, and B, rises to the level of required bargaining. And that was the General Counsel's first burden to prove by summary judgment, to put forward evidence of that. And they did not... So your view is there's a genuine issue of material fact that precludes summary judgment based on that? Okay. Well, my view is that the General Counsel failed to meet its burden to show the absence of such an issue. Okay. Why don't we hear from the other side? Thank you, Your Honor. May it please the Court. My name is John Mickley. I represent the Office of Congressional Workplace Rights. OCWR's motion for summary judgment included undisputed evidence showing that the Capitol Police... Before we get to that, can I ask you one? You raised the stuff about there seems to be a stay, that you say they didn't preserve their rights. Has anything gone into that yet? No, Your Honor. There has not been any... The other thing, I guess, I have is a global question. Since the Board didn't answer the questions that were the vast... I understood the vast majority of the issues in the complaint and the hearing officer had to do with the allegation that they had unlawfully abrogated the collective bargaining agreement, and that they had also, even if they could abrogate it, had failed and refused to bargain over the impact and implementation of getting rid of the CBA, not the future changes. I'm right about that, right? That that was the focus of the decision? No, the Board says, never mind. What if we were to vacate this and to send it back for a hearing, because we think there were disputes of fact, and it were to turn out that the employer prevails here? Because you haven't carried your burden to show that they did not bargain or give adequate notice on the impact and implementation of bargaining. Do you think the Board's then going to say, well, now that we didn't win on that, we're going to go back to the CBA issue? It's just very odd to me that they allied with the CBA issue. So what do you think happens then? Is that issue still potentially alive if you lose on this much more narrow aspect, or is that just gone? Your Honor, I'm not certain. I believe that if it were sent back, you're saying if it were sent back, could the other issues be raised and then set aside the impact and implementation bargaining? I presume that that could be the case, but we certainly would disagree with that, and we think that we did satisfy our burden on summary judgment. And if I may, there was substantial evidence in the record showing that the Capitol Police did not announce their changes to conditions of employment. And that undisputed evidence that's in the record is, as your honors were discussing, the letters and emails between the parties at the beginning of the pandemic. I thought they relied on two things, and I thought those two things were the union official's declaration, which I frankly don't think does it, because all he says is he didn't get formal notice from the employer at the same time that the Hoyer letter went out. That doesn't answer the question. He could have and should have and maybe would have said, and I didn't know about any of these changes until I saw them in the Hoyer letter, but he doesn't say that. And the other thing the board relied on, as I recall, was that you asked, somebody asked the employer, what did you do when they weren't responsive? Is there more than that that the board relied on to show that they didn't provide notice? And I believe what's more, your honor, is the letters and the emails themselves, which is the extensive communication between the parties at the beginning of the pandemic, showing all of their discussions. And in each subsequent letter showing that the CBA suspension is being extended, the board itemizes each of those letters and notes that in each additional extension, there is no notice of what changes they're going to do during this extension. And that's even though this charge was pending, even at that time. Show me where the board, why don't you show me where the board talks about that. Sure. So... I mean, they say on page 12, it is unnecessary for us to opine on when notice of those changes should have been given in this case. So they're not saying that they had to... Because notice of the changes were never given to the union, even after the changes were implemented. But doesn't, don't the emails reflect that they were discussing the changes? And doesn't even, they're getting the Hoyer letter, even if they got it after it was sent to Hoyer, when they say they're not talking about what the timing was, but they were never given notice even after the changes were implemented. So a couple of things there, Your Honor. First, the Hoyer letter does, in and of itself, it admits that it doesn't even list all of the changes to conditions of employment that exist. And that list has never been provided to anyone. Okay, so your view is there's stuff beyond the Hoyer letter that would change that they made. We don't know what those changes were. And that's sufficient to get you summary judgment. Don't all inferences go to the other side in summary judgment context? Your Honor, our view is that the communication between the parties at the beginning of the pandemic, those emails that you're talking about, those are just discussing a finite number of issues that the parties were raising. It's not full on notice and response bargaining over the impact and implementation of the 35 changes that we know happened. But this decision that we're reviewing isn't looking at notice and response and bargaining. It's only looking at notice. We are not looking at response and bargaining. You want on notice alone. So make sure you keep it to that. Yes. But also, I want to follow up on that Hoyer letter comment. This sentence in the board's opinion does seem wrong where it says that they didn't even get any notice ever. It's hard to find that that would be sufficient given the Hoyer letter, right? You're saying, does the Hoyer letter amount to notice? Yes. Yes, that's what I'm asking. I do not believe that the Hoyer letter satisfies their duty to provide sufficient notice to the union of the changes and conditions of employment. Why not? Well, first of all, Your Honor, it's a letter to Congress. It's not a letter to the union. I believe they only received it tangentially later on, not even directly from the Capitol Police. So second of all, it's notice of changes that have already been made. But the board has already told us that they're not looking at when the timing was, and it's not clear under the circumstances, given that there's been no finding that they unlawfully aggregated a collective bargaining agreement. I don't think anybody's resolved what kind of notice was necessary, the timing of the notice, for any number of maybe 100 things. Like if they're going to close the, you know, the dining room because somebody tested positive that morning. I mean, there are plenty of things that were happening, and the timing of the notice, nobody has said definitively they needed two weeks notice. In fact, part of the reason they aggregated the collective bargaining agreement and the union said we need to, rightly or wrongly, but they haven't done so wrongly, was because of all of these notice requirements and the obligations to bargain, and that they couldn't do it in light of the emergency. So the board didn't find that they had to give a certain amount of notice, right? No, that's right, Your Honor. They found that this notice here was wholly insufficient. Why? On what basis? I mean, they have to give a reason. Wholly insufficient, why? Because did they say that item number 24, the union tells us? I mean, the union was the one that has all the information. They know whether they got notice and when they got it. So there's nothing on the record, as far as I know, other than this union declaration about when they got the informally got the notice of the Hoya letter. Are there any union, am I missing something? Are there any union delegations looking at some of this stuff and saying, we didn't find out until 10 days after they did this that they did it. We tried to bargain, and they refused to bargain. Any of that? Your Honor, that is not in the record. But there's other pieces of evidence in the record that do demonstrate that the notice didn't exist. So can I answer that? That kind of goes to a question I have. If we were to say there's a genuine issue of material facts, this is very fact-specific, and send it back, would there be additional evidence that would be considered on remand on the notice issue? No, Your Honor, and I think you can see that from Why not? You just said there's additional evidence that's not in the record. Did I misunderstand you? I don't believe it. You said there's additional documents that might show a lack of evidence. I asked you if there was evidence, and you said not in the record, suggesting that there is evidence. It's just not in the record. I apologize. That's not what I intended to say. Okay. Would I, would I But you could get evidence, right? I mean, if it was necessary. I mean, let's assume we say this isn't sufficient to satisfy summary judgment. You need something to say we never got notice of item number 21 until the Hoya letter, that they implemented it. We don't even know when this stuff in the Hoya letter was implemented. Some of it could have been implemented five days before the letter went out. So somebody's got to say, don't we need those specifics? Your Honor, I think that the court was on the right track in the Capitol Police's argument pointing to the lack of response that they gave here. There's nothing that the Capitol Police has provided in their response, in their cross-motion for summary judgment, which was also in opposition to our motion, saying that they gave notice. That evidence has never met. What about Mr. Sun's declaration? All Mr. Sun's declaration says is that they announced the suspension of the CBA. Maybe I missed it, but let me, let's look at that. Sure. And I'm sorry for interrupting your question. I think the Sun declaration at page A445, paragraph 17. It says, nearly every day since I suspended the CBA, I have had email, telephone, and text communications with FOP, executive board members, including Chairman, I'm afraid I'll put your name, all these different people. These communications concerned many of the changes the department implemented as well as union suggestions of steps the department should take. Now that's, I realize that it doesn't say exactly what the communications were, but we're supposed to look at, make all inferences in favor of the non-movement. And this suggests there were email, telephone, and text communications. And the union could have put forth a declaration saying this isn't true, although that too would have established that there's a matter of dispute back here, which would preclude some of the judgment. Your Honor, I believe that those emails that the chief is referencing are in the record. The extensive communication between the parties is in the record. But what about the telephone and text communications? I don't see those in the record. There's no text communication in the record, Your Honor. And there's no telephone communication in the record. And did the board discuss these emails and say that this didn't demonstrate that the union knew what was going on, even though they were discussing the discipline stuff? Yes, the board did discuss that. That's on Appendix 11, the first full paragraph, where the board says, the communications from Chief Sund repeatedly notifying the union of the unilateral suspension of the entire CBA and the continued suspension of the agreement lacked any description whatsoever of the resulting changes in conditions of employment that would be affected as a result. Yeah, but that puts the burden on them to do it. The burden wasn't on them. I mean, do you have an affidavit from the union saying they didn't do this and they didn't do that? There's nothing in the declaration from the union official, right? That's correct, Your Honor. Let me move you to that piece of it, because the board keeps talking about undisputed facts. And it seems like, on the record, and I think maybe some of this is because, and my difficulty in understanding the timeline here is because, essentially, you were effectively litigating until the board got it. The ground level complaint was getting rid of the CBA and not barking on implementation of the CBA. The hearing officer says, and the board quotes him, the hearing officer concluded there were no material questions in dispute, undisputed facts. That's several times they say that. And I didn't even, I mean, the board, in the hearing officer's decision, now, there may have been no disputed facts on whether or not the employer abrogated the collective bargaining agreement, and whether he said he didn't have to bargain over the impact on implementation. But nobody, where is an indication that there were no disputed facts with regard to the subsequent events and changes in the Hoya letter? How is that undisputed? And how does everybody conclude, from the hearing officer up to the board, that this is all about undisputed facts? Yes, Your Honor, I believe it's the lack of evidence in the Capitol Police's motion for summary judgment. But we're not reviewing their motion for summary judgment. Yeah, we're not hearing Grantor to deny their motion for summary judgment. The motion, the burden was all on you on undisputed facts, not on that. I mean, all they had to show is that, right, is that they provided some notice of some things, maybe? I mean, right? Because they were trying to rebut your motion for summary judgment, that there was no notice whatsoever. I believe that our motion for summary judgment was that the notice failed to establish, with the specificity necessary under the law, all of the changes to conditions of employment that existed. And so I don't think that them putting forward some evidence of some notice would have been sufficient. But it also didn't do that, that there's no evidence in the record that there's some notice of some things listed in the Hoyer letter. Should we look at your motion on summary judgment for a minute? Is that what you mean? I think I saw where you raised the issue at the top of page A228. But please tell me if there's something that I'm missing there. What is your statement? It's A228. This is the motion for summary judgment. And it says FOP did not receive any direct notice, did not learn of most of the changes until May 7, 2020, or shortly thereafter when it received the Hoyer letter. Yes. So is there any place else in this brief where the issue of notice is raised? In the summary judgment brief? Yes. I believe that that's the main section of that brief. So this is the part where you said there wasn't notice, right? Yes. Where do you say here that it was not specific enough, not detailed enough, didn't include all the different things in the Hoyer letter? Where is that? Well, I don't believe that we raised that here. But that's your motion for summary judgment. And it wasn't timely in the circumstances. I mean, because in the Hoyer stuff, there's no dates associated for when this stuff was done. So it could have been done three days before. Yes, it could have been done. We don't know when any of the changes were made. And the board does not make a determination, and I can appreciate why, what the actual timing of the notice requirement was with each of these changes. I think it depends on the circumstances, right? You think that the timing of the notice depends on the circumstance of each change? Yes, as I said, if they evacuated the rest of the lunchroom today because three people tested positive, so they couldn't have given 10 days pre-notice for that. I understand that, Your Honor. Okay, can we go to the, it's in Appendix 166, the Hoyer letter, which is the subject of so much discussion, and the 35 points in the Hoyer letter. Well, I'm not going to make you go through all 35, but frankly, some of these clearly come off the list. Some of the, I mean, it just seems like these aren't issues that are subject to bargain. But can you pick out three or four or five of these that, one, demonstrate that the employer didn't give notice to the union, and that the union had the right to bargain over impact and implementation, and what notice would apply? So pick your top five or your top two. We can start with two. My top two that would require impact and implementation bargaining, Your Honor? Yeah. Sure. So, not necessarily my top two, but I'll pick out two. On 166, we see... For all eligible civilian and sworn employees, the department implemented an emergency telework status requiring employees to work from home where possible to facilitate social and physical distancing. And then we see... So you're saying the union didn't have notice of this emergency telework status requiring employees to work from home? They didn't have notice? No. I'm saying that there was never notice given to the union in sufficient time to bargain over the impact and implementation. And what declaration or what evidence suggests that? I would say that all of the communication between the parties that don't contain any notice of that Well, I mean, we talked about how it's hard to prove a negative, but the burden is on you all. Why, if they didn't get notice, and you say sufficient time, and I have no idea what that means, but don't you need somebody to come in and say, on this item, they never told us about this, or they told us about it on May 1st, and it went into effect on April 15th. Doesn't somebody have to tell us that information? You're the moving party here. Well, I believe that what the board is getting at is that it's never been clearly articulated. And as far as other changes go, I'd like to raise just the changes that really go to the heart of the labor-management relationship. So we know that they, in suspending the entire CBA, we know that they eliminated the entire grievance and arbitration procedure. We know that they eliminated all official time. That's the paid time off that union officials have a statutory right to for representing their employees. And we know that all disciplinary and representational rights of the union, which is their statutory right, were suspended pursuant to the CBA. So those are... There's a May 25th email regarding discussions that the union was having with the employer, and it says, in your email, you indicate that two officers covered by the CBA were recently issued discipline, and you suggested this was in violation of the agreement between you and Chief Zahn that discipline would not be issued during the thing. So they were discussing it, and I think they actually put all this stuff on hold, right? They assert that they put disciplines on hold, yes. Okay. So... And it appears that there was some discussion. So what's... Did they not know about it before it happened? I mean, where's the gravamen of the violation here with respect to that matter? The gravamen of the violation is that these are conditions of employment of employees. Their ability to file grievances under the collective bargaining agreement, their ability to have sworn officers who are union officials take official time. These are conditions of employment of employees that, again, really go to the heart of the statutory labor-management relationship that were suspended with no notice or an opportunity to even discuss it with the union. And these conditions of employment that are so central to the union's relationship, those ones were the ones that remained suspended the longest. Well, they say they stayed the deadlines relating to disciplinary action, right? Isn't that what the union would have wanted? Yes. Okay, so the department... That's what item number 12 says. The department stayed deadlines related to disciplinary appeals. The deadline clock for filing disciplinary appeals will not restart until the CBA is reinstated. They did say that, Your Honor, yes. Okay. Okay, I have a question for you about the remedy being sought. I was curious about the board's order, how the number of different items for a remedy, including making employees whole, and then also your complaint seeks additional remedies. I just wasn't quite sure. I'm just curious as to what the remedy is more specifically, just so I can understand what it is. Thanks, Your Honor. Yeah, the remedy that we're seeking is notice to the union of the changes and conditions of employment that were made from the start of the suspension of the CBA up until the time when the CBA was reinstated, such that the union has notice and an opportunity to bargain over those. How do you bargain over something? I mean, the CBA is back in effect now. This has been a while, right? And so how do you retroactively take care of that? Well, there could be... I mean, it would totally depend on what the notice given by the Capitol Police is, what they say they did. We don't even know. Well, you don't know, but you're issuing a complaint based on the changes that were listed in the Hoya letter. So let's look at the Hoya letter. The department implemented social and physical distancing practices at daily roll calls to reduce the potential for transmission of the virus. We have no idea on this record whether notice was given or not given, even though the burden is on you in summary judgment. So we don't know if notice was given. We don't know if the union said, that's great, or the union said, we have a problem after receiving notice. So what do we do with that in terms of a make-all remedy? What's the make-all remedy for that? So I understand that there are some of these, you know, COVID-specific changes to conditions of employment that it wouldn't be... Well, isn't that what most of these 35 items are? They are a lot of safety measures that were instituted during the pandemic, yes. But there's many other changes to conditions of employment that we know existed and that we know happened. Can you give an example of one? An example of a change? Of a change? I'm just trying to understand what the remedy is. So if you have an example of something... Sure, so an example would be with respect to scheduling, right? There's various scheduling and overtime provisions in the collective bargaining agreement. By suspending the collective bargaining agreement, all of that scheduling, the whole scheduling framework that the parties have and the union's ability to negotiate over that no longer existed. But that comes to your complaint about the suspension of the collective bargaining agreement. That doesn't go to notice and the lack of notice and the ability under the statute. I think this lack of notice argument is under the statute, not under the CBA, right? I don't understand. Were you just saying that I thought the board didn't... They didn't lose. There's no ruling that they unlawfully implemented, abrogated the collective bargaining agreement. And there's also no ruling that they failed to bargain over the impact and implementation of that. Am I wrong? Am I missing something in the board opinion? I thought the board allied with that issue entirely. Your Honor, I was trying to respond to you. You were trying to target what are some... What's an example of a change to a condition of employment that the union may be interested in bargaining over at this stage? Well, you know, Judge Stowe, I think, was interested in what's the make-whole argument. And you can't get a make... The make-whole dealt with the argument of the violation that the board found. And the board didn't find a violation for the abrogation of the collective bargaining agreement or for impact and implementation bargaining over that... over that abrogation. They only found... The only stuff they referred to was the stuff in the letter. So let's say... I'm sorry. What do we affirm? I'm following up on her question. If we were to affirm, what is your make-whole remedy? Because that would be the end of this decision, right? Yeah, so you're talking about the make-whole remedy for the employees, because you were... You have a complaint that you filed where you've said that you have certain remedies you're seeking. I want to know what remedies you are seeking for the lack of notice. So we're seeking an order requesting that the Capitol Police provide the union with an itemized list of the changes to conditions of employment that it made during the CBA suspension, such that the union has an opportunity to bargain over those changes... over the changes, demand to bargain over them. That's the order that we're seeking. Okay, made during, that are still in effect, or just that those that they... changes to the collective bargaining agreement when the collective bargaining agreement didn't exist and they did stuff that was COVID-related, that was only on an emergency basis, that is no longer in effect. Is that stuff on the table? And are you, when you say make-whole remedy, is there some make-whole remedy they should get for the three or two or four weeks that the collective bargaining was suspended? I think we're getting caught up on the make-whole portion of this, but we do believe... Well, is there no make-whole remedy, or is there... There may be a make-whole remedy depending on... On what? Depending on the changes that are announced to the union pursuant to an order of this court that affirms the board's order. Give me more specifics. A make-whole remedy with respect to what? Something in the Hoyer letter that reflects the alleged changes that were made during this period where the CBA didn't exist? Your Honor, I think, just respectfully, I think that we're... that the Hoyer letter is serving... The Hoyer letter serves as evidence that the Capitol Police made these changes without... made certain changes that it admitted to without providing notice. But we don't know the extent of the changes that they made during the CBA suspension. So you think you get an order from the board finding a violation, and then you get to do discovering and investigation about what the violation was so you can award a remedy based on something that isn't even in the record now? Are you talking about stuff that's not currently in the record? Your Honor, we believe that we do not know the extent of the changes that the Capitol Police made. Can you answer my question? So are you dealing with a make-all remedy for changes or things that happened that are not included in any place in this record? Yes, and that's what the board held because by what... In the Hoyer letter, when the Capitol Police say that these are just some of the changes to conditions of employment that they made, they're admitting that there are changes to conditions of employment that exist out there that they have never announced to the union. So where's the board's order? What does the board say in the order in regards to that? You say that's what the board held. To make... Look, it's under B, A14. To make the employees whole for any and all losses they have incurred as a result of the unilateral changes to their conditions of employment resulting from or during the indefinite suspension of the CBA. Yes, Your Honor. So are you saying that we've got a record, and you're going for summary judgment, predicated on the fact that there are no factual disputes about any of these matters? So we should say, yes, we're granting you summary judgment, no factual disputes, and now you get to do an investigation about what changes occurred, when notice was given, and then decide what the make-all remedy is for those changes as part of the remedy in this case? Yes, Your Honor. Okay. Yes. Thank you. Even though we're way over time, it'll be your five minutes, Ms. Michak. Is it Michak? Michak. Michak. Good morning. Megan Michak from McGillivary Steel Elkin on behalf of the intervener in this case, the FOP, United States Capitol Police Labor Committee. I think in this particular case we need to take a step back and recognize how unprecedented and unusual what the United States Capitol Police did in this case. What it did was conclude at the beginning of the COVID-19 pandemic that it was unable to respond to the unpredictable circumstances presented by that pandemic while also complying with its obligations under federal law. And it simply wrote the union out of existence for that period. So from March of 2020, when the United States Capitol Police notified the union that the CBA was going to be suspended until it was fully reinstated in April of 2021... I believe that the board concluded that... Or that the hearing officer and the board concluded that they did not need to reach that question because they were... We don't need to reach that question. Yes, ma'am. Yes. Okay. So in this particular case, the board concluded that there was not adequate notice to the union of the changes to working conditions that were made during the pandemic. And we believe that there is adequate evidence in the record to show that because there is evidence in the record to show that from the notices that the United States Capitol Police provided starting with its first notice, which is at A-153, and continuing on, all that Chief Sund let the union know was that the CBA was going to be suspended in its entirety. And I think it's important to turn to the efforts of discovery in this case, specifically the United States Capitol Police's responses to inquiries by the Office of Congressional Workplace Rights, specifically Ms. Sindian's June 8, 2020, letter. Could you give us the site for that? Yes, ma'am. It starts at A-379. And in that correspondence, Ms. Sindian, our USCP, is asked a number of questions, including identifying the emergency measures that were adopted and the dates that they were implemented. And the only thing that they identified was the Hoyer letter, right? What they indicated was the attached letter of the Hoyer letter was sent to certain members responding to their concerns. The letter details most, but not all, of the operational and administrative changes the department implemented. So effectively, the department refused to provide this information, not only to the FOP at the time it was making the changes... This is discovery. If you don't have enough evidence, the way to do that is to have a hearing, and the hearing officer can subpoena the stuff or they can be requested for discovery. But you're saying, because we didn't have enough evidence, we should win? Under the law, the Capitol Police was required to respond and participate in this process. The Office of Congressional Workplace Office's investigation, and it failed to do that. And so... Are you also relying on this letter as evidence showing that the only notice provided was the Hoyer evidence, since the only notice provided was the Hoyer letter because it's the only thing they identified? Actually, we're relying on this letter for that purpose because two of the questions that were asked of the United States Capitol Police, how were the emergency measures communicated to the union, and when were they communicated, that's on A380. If it was written, please provide any documents supporting these communications. And nothing was provided in response to that. Let me ask you about that because I think your friend, when we asked him to call out specifics, I may be wrong, so I apologize. I think one of the specifics he called out was the grievance and arbitration. Yes, ma'am. Okay, so on A468, we have an email from the union president saying, Chief, with the Department suspending the CBA, I'm respectfully requesting all 534 through 535 appeal grievance responses that were due to be extended 15 days after the CBA is once again restored. I don't want the Department denying any grievance or appeals on time limits at the moment. Thanks, Gus. And then Chief Sun responds, no problem. Since the CBA was suspended today, I will agree to stop the clock on the 15-day appeal and or grievance time limit and restart the clock when the CBA is reinstated. Have a good evening and stay stable. Chief, then, just to be clear and to clarify, so we are both on the same page, we are putting on hold ya-da-da-da. Yes, ma'am. So, there, what's the problem with that? Obviously, implicitly, we know he had noticed. He's asking the Chief about this and the Chief is responding and there's no obligation for the employer to necessarily agree with the union on everything, but it appears noticeably that they seem to have discussed this and reached agreement and the union got what it wanted. So, is this, in your view, is this grievance arbitration issue at least off the table to make whole purposes or is there still a problem? Not necessarily. There is still a problem with it because that email correspondence, I believe, occurred on or around March 20th, the date that the collective bargaining agreement was suspended. The collective bargaining agreement was suspended indefinitely and so while that was an immediate solution to that problem, the parties, because the Capitol Police did not provide the notice to the union of how long the CBA was going to be suspended. Well, they didn't know how long the CBA was going to be suspended. Exactly. But at that point, while that may have been an immediate issue, the CBA ended up being suspended for over a year and the issue was never revisited because after that, the department took the position as it did in the early stages of the ULP litigation that it wasn't required to bargain with the union, that effectively there was no reason to check. Okay, so you think and their deficiency, which the board focused on, which was lack of notice, so every month that the CBA wasn't going to be reinstated, they had to provide the union with notice that we're not reinstating grievance procedures for the union to be on notice that they weren't reinstating grievance procedures? I don't know that it needed to be every month, ma'am, but yes, certainly there should have been an opportunity to revisit these issues and the United States Capitol Police's unilateral determination that it didn't want to process any grievances. Was that presented below, by the way? I'm sorry? Was that argument that you just made presented below? I don't see it in the appeal brief. I don't believe it was. So can I ask a related question? I'm sorry, but if we think there's a genuine issue of material fact, because I'll tell you one thing I'm learning from this oral argument is that there's a lot of theories and facts that haven't really been fleshed out. If we think that neither party met its burden to show a lack of genuine issue of material fact, what relief is going to be requested? I mean, what should happen below? I think we have to, if you determine that there is a genuine issue of material fact, I think we have to go back and have the hearing on the, have the hearing on whether there was a violation of the statute. Substantively, with respect to this decision to suspend the CBA as far as the statute is concerned, as well as on the notice question. Wait a minute, wait a minute, wait a minute. But, well, that's up to the board. I mean, the board has decided that as long as, as I understand, the board decided rightly, for whatever reason, that as long as they've got this issue that they think has some merit, which is eyeing up impact and implementation bargaining, not of the end of the CBA, but of what changes were going on during the emergency, they don't have to reach that. So, I don't know. Do they have to reach that issue for you to be entitled to any of the relief that's being requested in the complaint? I don't think that you do, ma'am. So they wouldn't necessarily, or likely, if they're going to remand on the issue of their decision, then it would deal exclusively with what they ruled on. Potentially, yes. But then it would go back to the hearing officer who, as well, issued a decision. Potentially. Is there something about the make-whole remedy that would be somehow relates more to the suspension of the collective bargaining agreement than it would to notice? I think, at this point, those issues can't be untangled from the union's perspective because, without the notice, it's impossible to say what the union would have sought to bargain over and, therefore, what that make-whole remedy would be. Because, again, the union did not know. I understand. I think it makes that your make-whole remedy very difficult to achieve whereas going right to the question of whether the CBA suspension violated the statute, which is your main argument that was raised in the complaint, might be more tailored to the remedy sought. But, okay. Perhaps. Thank you. Thank you. All right. To make things even, we should probably give you 20 minutes, but we're not doing that. We'll restore three minutes every couple of minutes. Thank you. We just heard a lot of argument about the suspension of the CBA and the grievance process and so on and so forth. But, in all due respect, that's not an issue. I mean, the Board here, as you say, elided that entire issue. But I do want to address one thing. When you ask counsel for the general counsel to point out in the lawyer letter what was a change in working conditions that required bargaining, and the one he  teleworking. Now, teleworking, as I said earlier, the union doesn't represent every employee at the USCP. It represents about two-thirds of those employees, most of whom are sworn officers. Now, the officers, telework doesn't work for officers. They can't telework. You can't telework to a security station. You can't telework to guard somebody. So, the lawyer letter says, this is for all eligible employees and where possible will have telework. So, before the union could argue that teleworking was a change in working conditions, it had to put forward evidence that some members of the union were required to telework. The record is empty. Nothing in the record about that. Aren't there lots of rules and regulations and government governing all government employees about who can telework and who wants to work as a security agent? Anyway, all right, well, I would just urge the parties, assuming we stick with the limits of the board's opinion, which got rid of the aggregation of the collective bargaining agreement and I and I with respect to that matter, I would hope that this is, I'm not speaking as a judge here, but I would hope that if this has to go back for a hearing, doesn't seem like there's that much at stake and we're dealing with things that happened four years ago, many of which were emergency procedures, so God willing, not likely to occur again, I would hope that there's some way that the parties can find to deal with this in a mediation form or in a settlement form to just resolve these issues better for them and better for everyone. Thank you. I want to ask you one question. I asked opposing counsel, so I want to make sure I ask you too. If we conclude that the  is over, will there be additional evidence offered or would the hearing involve the same exact record? I think what should happen is it should be remanded to the board. The board does not have a record on which it can resolve the factual issue. I'm not sure what was asked, what was requested originally with the hearing officer. It was an evidentiary hearing on the summary judgment motion and the hearing officer denied that because in his view the facts were there on the issue of the suspension of the hearing and the issue of notice. That's what happened in statute. Thank you Your Honor.